C. P. MOREY, The (MOORE v.). See Case No. 9,756.

CRABB (BANK OF THE UNITED STATES v.). See Case No. 913.

CRABB (EMACK v.). See Case No. 4,432.

## Case No. 3,314.

### CRABTREE v. CLARK et al.

[1 Spr. 217;[1] 16 Law Rep. 584.]

District Court, D. Massachusetts. Dec. Term, 1853.[2]

CHARTER PARTY—RIGHTS OF THE PARTIES.

1. By charter party, it was covenanted that the charterer should furnish a cargo of salt at Buen Ayre, and that the master should there receive it on board of his vessel, and carry it to Boston. It was further agreed that the master should use the vessel's funds, in the purchase of the salt. *Held*, that the risk of there being salt at Buen Ayre was upon the charterer.

2. The master was not bound to wait for a cargo, when there was no hope of obtaining any, and the delay would have been useless.

3. If other goods could have been obtained at Buen Ayre, on freight, to diminish the loss to the charterer, it would have been the duty of the master to take them. But he was not bound, for that purpose, to purchase cargo at his own risk, or to go to other places to obtain it.

This was a libel for damages in the nature of freight. The libellant [Enoch Crabtree], by a charter-party, agreed with respondents [Arthur P. Clark and others] to receive on board the brig Carniola, of which he was master, at Buen Ayre, a cargo of salt, and to bring it to Boston. The respondents stipulated "to furnish at Buen Ayre, a full cargo of salt," and to pay freight upon it at fourteen cents per bushel. In addition to the above, and the other stipulations usual in such contracts, the charter-party contained the following: "It is further understood and agreed, that the master is to use the vessel's funds in payment for salt, which he is to purchase at the lowest cash price; and on vessel's arrival at Boston, the charterers are to pay the master, or his agent, the invoice cost of salt, export duty, if any, and insurance on amount invested in purchase of salt, from Buen Ayre to Boston, and Boston wharfage, all in addition to the freight." The Carniola went to Buen Ayre, furnished with funds to buy a cargo, but there was no salt there, and after remaining twenty-four hours, she left and proceeded to Boston in ballast. This action was brought to recover damages of the respondents, for their failure to furnish a cargo.

The respondents contended, 1st. That the libellant's engagement to purchase the cargo should be construed as a condition precedent to their own obligation to pay freight. 2d. That assuming that the respondents had contracted, without limitation, to furnish a cargo of salt at Buen Ayre, the libellant should have remained there a reasonable time, for them to perform this contract, and could not otherwise charge them with damages for an alleged non-performance. 3d. That assuming that the libellant was, under the contract, to be regarded as the agent of the respondents for the purchase of salt at Buen Ayre, yet, that failing to find salt there, his agency was enlarged from necessity, and required him to endeavor to buy salt at Curaçoa, or any other place or island, where he conveniently could.

J. C. Dodge, for libellant.

C. B. Goodrich and T. K. Lothrop, for respondents.

SPRAGUE, District Judge, held that the respondents had broken their contract, in failing to furnish a cargo; that the libellant's obligation to invest the vessel's funds in the purchase of a cargo, was not broken by his failure to do so, unless there was salt at Buen Ayre to be purchased; or, in other words, that by the proper construction of the charter-party, the respondents were to be regarded as taking the risk of there being salt at Buen Ayre. That the libellant was not bound to remain at Buen Ayre longer than he did, unless there was some ground to expect that a cargo might be procured by longer delay, and that from the evidence in this case, it was apparent that longer delay would have been useless; that if cargo of any kind could have been obtained at Buen Ayre, to be brought to Boston as freight, the libellant would have been bound to take it, that the proceeds might diminish the damages, for which the respondents were liable; but that he was not bound to purchase a cargo on his own risk, or to go to Curaçoa, or any other port, in pursuit of business, and thus by a deviation, endanger his insurance.

Decree for the libellant, for $1,296.61.

This decision was affirmed, upon appeal to the circuit court. [Clarke v. Crabtree, Case No. 2,847.] See Bailey v. Damon, 3 Gray, 92; Wilson v. Hicks, 40 Eng. Law & Eq. 511.